SAMUEL P. WITHROW, Appellant, v. LILLIE M. WALKER *et al.*, Appellees.

Ownership of Land: ADVERSE CLAIMANTS: LACHES: ESTOPPEL. The plaintiff received a conveyance of uncultivated prairie land in the year 1857, in part payment of an antecedent indebtedness. Prior to the execution of such conveyance, the plaintiff's grantor had mortgaged the same property to one C., but this mortgage

was not recorded until after the date of the deed to plaintiff : there was evidence tending to show, however, that plaintiff had actual knowledge of the mortgage before the acceptance of his deed. In 1862 the mortgage to C. was foreclosed, the property sold thereunder, and sheriff's deeds were subsequently issued. The plaintiff, however, was not made a party to the foreclosure proceeding. In the year 1868, the purchaser at the foreclosure sale conveyed the property to one M., and he or his heirs paid the taxes on the land for all subsequent years, up to the commencement of this suit, and a part of the land had been broken by themselves or their tenants. All the parties interested were nonresidents, but the plaintiff knew during this time that the taxes were so paid, that M. or his heirs claimed to be owners of the land, and that the same was being improved. In 1864, the plaintiff commenced an action to quiet his title to the land, as against his grantor and C. and M., all of whom appeared and answered, but the plaintiff dismissed the action without a trial on the merits. Another action was commenced by him in 1870, asking to redeem from the mortgage foreclosure, which was dismissed for failure to file a cost bond ; and still another action commenced in 1887, against a tenant of M.'s heirs, to recover possession of the land, was dismissed for the same reason. In this action the plaintiff claims that the indebtedness secured by the mortgage to C. is barred by the statute of limitations, offers to pay all taxes that have been paid by M. or his heirs, and demands an accounting, and judgment for the amount in which the rents exceed the taxes. *Held*, that the plaintiff's conduct estopped him from claiming title to the property adverse to the heirs of M.

*Appeal from Story District Court.*—HON. S. M. WEAVER, Judge.

SATURDAY, JANUARY 24, 1891.

THIS is an action to recover the possession of real estate, and to quiet the title thereto in the plaintiff. The defendants claim to own and to be entitled to the possession of the land, and ask, by way of cross-petition, that their title be confirmed and quieted as against plaintiff. Judgment was rendered in favor of defendants as prayed. The plaintiff appeals.

*J. W. Bull,* for appellant.

*J. L. Dana,* for appellees.

ROBINSON, J.—The land in controversy in this action consists of eight hundred acres, situate in the counties of Adair, Greene and Story. On the eighteenth day of March, 1857, George H. Reed, in whom the title to the land was then vested, executed a mortgage thereon, and on two hundred acres of land in Hardin county, which he also owned, to John W. Cooper. The mortgage was given to secure the payments of promissory notes, which amounted, in the aggregate, to fifty-five hundred and forty dollars, and was transferred on the day of its date to the Oxford Female College, at Oxford, Ohio. It was recorded in Story county on the tenth day of June, 1857; in Hardin county on the sixth day of July, 1857; in Greene county on the twenty-seventh day of August, 1860; and in Adair county on the next day. On the seventh day of April, 1857, Reed conveyed the land described in the mortgage to plaintiff. The consideration named in the deed was seven thousand dollars. At that time, Reed was owing to plaintiff the sum of ten thousand dollars, and the conveyance was made on account of that indebtedness. On the twenty-fourth day of April, 1862, the Oxford Female College commenced an action in the district court of Greene county for the foreclosure of the mortgage, making Reed and his wife parties defendant, and serving the original notice by publication. In August, 1862, judgment was rendered in favor of the college for fifty-four hundred and twenty-nine dollars, and a decree foreclosing the mortgage was entered, Reed and wife not appearing. Executions were issued on the judgment, the land was sold thereunder to the college, and sheriffs' deeds executed therefor, and recorded, On the thirtieth day of November, 1868, the college conveyed all the land sold under the degree of foreclosure, including that in Hardin county, to Robert D. Morris. Morris was for a number of years president and financial agent of the college. He died in the year 1882. The record shows that the taxes on the land in question for the year 1857, and all subsequent

years, were paid by Morris and his executors. In February, 1878, he hauled lumber for yard and stable on the Story county land, and, in March, April, May and June of that year, broke one hundred and eighty acres of it. During the next year, he broke twenty acres, and, during the year 1884, he broke seventy acres. After he received the deed from the college, in 1868, he at all times claimed to be the owner of the land until his death, and, since that time, it has been claimed by his heirs. All the persons who have claimed to be interested in the land, as owners, since the year 1857, have been non-residents of Iowa. Prior to the year 1878, the land was unimproved prairie, and not in the actual possession of anyone. The only possession plaintiff ever had was that which the deed to him would confer. In 1864, plaintiff commenced an action in the district court of Story county, to quiet his title to the lands in question, making Cooper, Reed and Morris parties defendant. They appeared, and filed answers, but the case was dismissed by the plaintiff without a trial upon the merits. In the year 1870, plaintiff commenced action in the same court, making Morris defendant, and asking to redeem from the mortgage foreclosure. That was dismissed in the year 1871, on account of the failure of the plaintiff to file a cost bond. A third action commenced, in the year 1887, against J. C. Lee, a tenant, to recover the land in Story county, was dismissed for the same reason. The defendants in this action are the heirs of Robert D. Morris, deceased, and their tenants.

Plaintiff claims that, at the time he received the deed from Reed, he had no knowledge of the mortgage to Cooper, that he was not made a party to the foreclosure proceedings, and had no knowledge of them; that the debt secured by the mortgage is barred by the statute of limitations of the state of Ohio, and of this state; and that he is entitled to an accounting. He offers to pay all taxes that have been paid by Morris and defendants, and demands an accounting and judgment for the amount which the rents exceed the taxes.

The deed of Reed to plaintiff was recorded in Story county in July, 1861.   The acknowledgment, however, was so defective that the record of the instrument did not give constructive notice at the time the foreclosure proceedings were commenced.   It is insisted by appellant that, although the acknowledgment was defective when recorded, yet the college had actual notice of the existence of the deed ; that the acknowledgment and record were legalized by subsequent acts of the general assembly ; that the holder of the legal title is necessary to a foreclosure suit, and that a valid decree of foreclosure cannot be rendered until he is made a party ; that plaintiff was not made a party to the foreclosure proceedings of 1862, and Reed was made a party only by publication, and failed to appear ; therefore, that the court acquired no jurisdiction to render a decree which could affect the title to the land ; that Morris and his heirs acquired possession only as mortgagees, and that a possession so acquired and held cannot be adverse to the owner of the fee ; that plaintiff has never been challenged to assert or defend his title, and can now claim it.

We do not find it necessary to determine all the questions presented by appellant.   It is contended by appellees that the facts disclosed by the record are such that appellant should be estopped from asserting title against them, and we think the claim is well founded. As already stated, plaintiff took the deed from Reed on account of an antecedent debt.   He parted with nothing of value at that time, released no security, and entered into no new undertaking.   The testimony as to the time when he received the deed is conflicting, some of it tending to show that he received it after the mortgage had been recorded, and with actual knowledge of its existence.   His subsequent conduct to some extent sustains that theory.   He admits that he regarded the deed as of little value, and made no attempt to pay taxes, or assert any title adverse to the mortgage of Cooper, until he commenced his action of 1864.   It is true he had some conversation with Reed and persons representing

the college before proceedings to foreclose were commenced, in which he claimed title, but in those conversations he did not deny that he knew of the mortgage when Reed conveyed the land to him, although it was not mentioned in the deed. Reed told him, in a conversation had in June, 1860, that he had knowledge of the mortgage at the time the land was sold, and his answer was: "Did I?" If he took any trouble to ascertain the fact, he knew that Morris was paying all the taxes as they became due, and in the year 1878, and later, he knew that the land was being improved. He knew in 1864 that the mortgage held by the college had been foreclosed, and that the land had been sold, and sheriffs' deeds therefor executed. He knew after that date, therefore, that the college and its grantees were claiming title not as mortgagees merely, but as owners in fee; and hence that their claim was adverse to him. He recognized the validity of the foreclosure proceedings in 1870, by commencing his action to redeem therefrom. He claims to have abandoned the suits of 1864 and 1870 for financial reasons, but we are satisfied from his own testimony that he had ample means for the prosecution of his suits to judgment. He delayed bringing this suit so long that it is difficult, if not impossible, to ascertain the material facts of the case. He is over ninety years of age, and evidently does not recollect as well as he probably did a quarter of a century ago. His testimony is in some respects conflicting. It is admitted that his principal witness, the attorney who claims to have secured the deed from Reed, is mistaken as to material facts. Reed died in the year 1882, and there is no means of supplying the testimony he could have given. From the year 1863, the defendants, and those through whom they claim, were constantly asserting title adverse to plaintiff, and exercising all the rights, and discharging all the duties, which actual ownership would confer. The sheriffs' deeds created at least such a color of title that, coupled with the requisite possession, it would have ripened into a perfect title by virtue of the statute of limitations. *State*

*v. Beckey*, 79 Iowa, 360; *Railway Co. v. Allfree*, 64 Iowa, 500. The possession taken by Morris in the year 1878 would have been sufficient had he then been a resident of the state. The plaintiff has been negligent for more than thirty years. It is true he commenced two actions at different times, in which he asserted an adverse right, but he abandoned both when defenses were interposed, and for seventeen years remained quiet. His conduct was well calculated to induce Morris and his heirs to believe that he had no faith in his alleged title, and would not urge it against them. The real owner of land may, by his negligence, estop himself from asserting title. *Hall v. Doran*, 13 Iowa, 370. A court of equity "will never interfere in opposition to conscience or good faith. * * * It will never be called into activity to remedy the consequences of laches or neglect, or the want of reasonable diligence." *Creath's Adm'r v. Sims*, 5 How. 204. See, also, *Sheldon v. Rockwell*, 9 Wis. 180; *Tash v. Adams*, 10 Cush. 253; *Lucas v. Hart*, 5 Iowa, 419; *Briggs v. Jasper Co.*, 49 Iowa, 483; 1 Pom. Eq. Jur. 465. A court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court. *Brown v. County of Buena Vista*, 95 U. S. 157. See, also, *Bausman v. Kelley*, 36 N. W. Rep. (Minn.) 334; *Sebring v. Sebring*, 10 Atl. Rep. (N. J.) 193 *McCartin v. Traphagen*, 11 Atl. Rep. (N. J.) 163; *Land Co v. Macauley*, 6 S. E. Rep. (Va.) 699; *Sanchez v. Dow*, 2 South. Rep. (Fla.) 844; *Wood v. Egan*, 2 South. Rep. (La.) 191; *Smith v. Thompson*, 7 Gratt. 112; *Le Gendre v. Byrnes*, 14 Atl. Rep. (N. J.) 624. We conclude that, under the circumstances of this case, it would be contrary to the principles of equity to permit plaintiff to recover. His long silence and delay in bringing this action, with knowledge of the adverse acts and claims of the college, Morris and his heirs, raise a strong presumption against him.

He has made it difficult for the court to ascertain the exact truth in regard to various matters in issue. There is nothing shown which tends to justify his conduct, and we are of the opinion that he should not now be permitted to assert a claim adverse to defendants, nor to question their title.

The judgment of the district court is AFFIRMED.