HARRIET W. GRAY ET AL., v. SOLOMON BLOOM, GEORGE S. WRIGHT ET AL., Appellants.

Action to quiet title: ADVERSE POSSESSION: PLEADING. The petition in an action to quiet title which alleged that plaintiffs and their grantors had been in the actual occupation and ownership of the premises, notorious and hostile to every claim of defendant, and that by reason thereof any claim or interest of defendant was barred by the statute of limitations, and the allegations of the reply were that whatever claim or right defendant asserted was stale and barred by the statute, in that more than fifteen years had elapsed prior to defendant's assertion of title, was a sufficient plea of the statute of limitations, in the absence of any objection thereto.

Same: EVIDENCE. Where plaintiff's grantor had continued in possession of the premises as owner, paid taxes, made repairs, mortgaged the property, and in every way treated the property as his own for the statutory period, adverse possession as against the holder of a sheriff's deed was sufficiently shown.

Same: LIMITATIONS: LACHES: EQUITABLE POWER. While a court of equity will recognize and is governed by the statute of limitations it also has power to disregard and reject stale claims although not technically barred.

**Same:** LACHES. Laches will not be imputed to one in the continuous and peaceable possession of premises because not resorting to a court of equity to maintain his rights, while the holder of an adverse title who sleeps upon his rights for fifteen years, and till proof of the rightfulness of plaintiff's possession has been rendered difficult by reason of the death of his grantor, is guilty of laches.

**Same.** It is not a defense to a plea of laches for failing to assert an adverse title to property for a long series of years that those in possession had suffered no pecuniary loss; as loss of timely opportunity to make any defense to an adverse claim which may have existed is sufficient reason in equity for refusing to entertain it after so long a time.

*Appeal from Pottawattamie District Court.*—HON. W. R. GREEN, Judge.

WEDNESDAY, JULY 5, 1911.

ACTION to quiet title to certain described premises to which plaintiffs claim to hold the legal title as heirs of John P. Williams and Hannah C. Williams, his wife, both deceased. J. C. Spangler, administrator of the estate of Hannah C. Williams, who survived her husband, is also a party plaintiff. No defense was made for Solomon Bloom, but George S. Wright by way of answer and cross-petition alleged title in himself under two separate sheriff's deeds, executed in pursuance of execution sales under judgments against J. P. Williams, and he asked that he be decreed to be the absolute and unqualified owner of said premises. There was a decree for plaintiffs quieting title in them, and dismissing defendant Wright's cross-petition, and from this decree he appeals.—*Affirmed.*

*A. W. Askwith,* for appellant.

*Flickinger Bros.,* for appellees.

McCLAIN, J.—It appears that in the year 1874, or

at some time prior thereto, John P. Williams erected on premises described as lots 1 and 2 and the east half of lot 3, in block 7, of Mynster's addition to Council Bluffs, a building for residence purposes, consisting of four apartments or tenements, the western of which was situated on the west fourteen feet of lot 2 and the east half of lot 3, and that he was in possession and occupation of these tenements by himself and tenants uninterruptedly until his death in August, 1908. His widow died about a year later, and plaintiffs, who are the children of Williams and his wife, and their sole surviving heirs, as such claimed to be the owners of the entire premises above described. As such heirs they seek to quiet their title to the west fourteen feet of lot 2 and the east half of lot 3 as against defendant Wright, who claims title thereto under sheriff's deeds. It should be stated, however, although perhaps not material in determining the rights of the parties, that John P. Williams, although he erected these tenements in 1874, or perhaps prior thereto, and was apparently in the occupancy and possession thereof from that time, did not have record title until 1888, when his mother executed to him a warranty deed therefor, which was recorded in 1891. Defendant Wright's claim of title is based on the following records: In February, 1875, the Council Bluffs Iron Works obtained judgment against John P. Williams in the district court of Pottawatamie County for the sum of $132.56, with interest, and at an execution sale under this judgment had in November, 1894, the premises last above described were sold to defendant Wright for $150, in pursuance of which sale a sheriff's deed was issued to said Wright in November, 1895, and duly recorded; and in September, 1891, the Chicago Lumber Company obtained judgment against John P. Williams for $162.03, with interest, under which judgment the same premises were sold under execution to said Wright in November, 1895, for the sum of $19, and a

sheriff's deed of such sale was executed in December, 1895, and duly recorded. Until after the death of John P. Williams and his wife, defendant Wright had, so far as the record shows, asserted no right to possession of the premises under his sheriff's deeds. On the discovery of the record of these deeds, when effort was being made by plaintiffs as heirs to dispose of the entire premises first above described, this action was brought to quiet plaintiff's title as against defendant Wright. As against the claim of title based on these sheriff's deeds, the plaintiffs rely upon the statute of limitations and the equitable plea of laches.

I. With reference to the statute of limitations, the contention for defendant is that the statute was not pleaded. But in their petition plaintiffs allege that they and their grantors have been in the actual occupation and ownership of the premises, open, notorious and hostile to each and every claim of defendant for ten years, and that, by reason thereof, any claim or interest of defendant is barred by the statute of limitations, and in their reply to defendant's answer and cross-petition they allege that whatever claim or right is asserted by defendant is stale and barred by the statute of limitation, and that more than fifteen years had elapsed after the obtaining of said alleged sheriff's deeds prior to the filing of defendant's said answer. This, in the absence of any question raised by defendant as to the sufficiency of the allegation, properly presented to the court the issue as to whether defendant's claims were barred. Of course, the possession of plaintiffs and their ancestor would not be adverse unless under claim of right or color of title, but the pleading that the statutory period of limitation had run as against defendant's claim or interest by reason of the adverse possession of plaintiffs and their ancestor was sufficient to present the issue of the bar of the statute.

*1. ACTION TO QUIET TITLE: adverse possession: pleadings.*

As to the facts, the contention for appellant is that after the execution and recording to the sheriff's deeds John P. Williams continued in possession impliedly as the tenant of the grantee in such deeds, and that, after the execution and recording of the deeds, Williams had no claim of right or color of title upon which plaintiffs can now plead the statutory limitation. But the question whether Williams was in the possession and occupancy of the premises after the execution and recording of the sheriff's deeds as a tenant of Wright or under a claim of right and color of title notwithstanding the existence of the deeds was a question of fact. It appears that after the execution of the deeds he continued as owner to pay the taxes, kept the premises in repair, and held them as his own. It also appears that during this time he executed a mortgage on the premises as his own, and in every respect treated the premises as though they belonged to him in his own right. This was sufficient to show a possession adverse to Wright holding the sheriff's deeds under a claim as owner against the whole world. *Wilbur v. Cedar Rapids & M. R. R. Co.,* 116 Iowa, 65.

*2. SAME: evidence.*

II. As against defendant's claims, plaintiffs' plea of laches is still more conclusive. In this state a court of equity recognizes as binding upon it the provisions of the statute of limitations, but it also possesses the equitable power of disregarding stale claims, even though they may not have been technically barred by the statute. In *Mahaffy v. Faris;* 144 Iowa, 220, this language is quoted with approval from another case:

*3. SAME: limitations: laches: equitable power.*

A court of equity applies the rule of laches according to its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be solved by the sound discretion of the court. . . . The law of laches, like the principle of the limi-

tation of actions, was dictated by experience, and is founded in a salutary policy. The lapse of time carries with it the life and memory of witnesses, the muniments of evidence, and other means of proof. The rule which gives it the effect prescribed is necessary to the peace, repose, and welfare of society. A departure from it would open an inlet to the evils intended to be excluded.

To the same effect, see *Withrow v. Walker,* 81 Iowa, 651; *Horr v. French,* 99 Iowa, 73; *Bacon v. Chase,* 83 Iowa, 521; *Loesche v. Goerdt,* 123 Iowa, 55; *Joseph v. Davenport,* 116 Iowa, 268; *Mathews v. Culbertson,* 83 Iowa, 434; *Mickel v. Walraven,* 92 Iowa, 423; *Wenger v. Thompson,* 128 Iowa, 750; *Woodward v. Barr,* 128 Iowa, 727; *Warner v. Hamill,* 134 Iowa, 279; *Doyle v. Burns,* 123 Iowa, 488; *Galliher v. Cadwell,* 145 U. S. 369 (12 Sup. Ct. 873, 36 L. Ed. 738); *Mackall v. Casilear,* 137 U. S. 556 (11 Sup. Ct. 178, 34 L. Ed. 776); *Abraham v. Ordway,* 158 U. S. 416 (15 Sup. Ct. 894, 39 L. Ed. 1036); *Hammond v. Hopkins,* 143 U. S. 224 (12 Sup. Ct. 418, 36 L. Ed. 134).

After allowing Williams and these plaintiffs as his heirs to remain in undisturbed possession and occupancy of the premises for nearly fifteen years and after proof

4. SAME: laches.

as to the rightfulness of this possession and occupancy as adverse to defendant's claims had become impossible by reason of the death of Williams, it would be most inequitable to allow defendant to assert title under his sheriff's deeds. Laches can not be imputed to plaintiffs or their ancestor for they have been continually in the peaceable possession and occupancy of the premises, and no resort to a court was necessary to maintain their rights. Such continuous possession and occupancy was notice to the whole world, and they had no occasion to resort to a court of equity until it became apparent that there was some hostile assertion of right. *Ruckman v. Corey,* 129 U. S. 387 (9 Sup. Ct. 316, 32 L. Ed. 728).

It is not a sufficient answer to plaintiffs' plea of laches to say that plaintiffs and their ancestor suffered no direct pecuniary loss by the failure of defendant Wright to take possession under his sheriff's deeds.

5. SAME. The loss of timely opportunity to make any defense which may have existed constitutes a sufficient reason in equity for refusing to defendant Wright his opportunity to now show that the title and right to possession accrued to him fifteen years before he came into a court of equity, asserting for the first time in any active manner so far as this record shows his claims under such deeds.

The decree of the trial court is *affirmed*.